(Franklin County Court of Common Pleas.)

SARAH D. MINER v. THE TRAVELERS' INSURANCE COMPANY.

By the terms of an exception in an accident insurance policy, it was stipulated that the insurance company was not to be liable, when death resulted "wholly or partially, directly or indirectly, from * * * hernia."

The insured started to run through an half-open door of his residence to catch a passing street car; he ran against the door knob, receiving an injury called hernia; from that injury he died.

The decision is that the company is not exempt, under the terms of the exception, from liability for the amount of the policy.

(Decided May, 1895.)

---

PUGH, J.

L. M. Miner was insured against death by accidents by the defendant company, for one year, and for the benefit of the plaintiff, the amount being $1,000. Within the year, the petition alleges, on the 18th day of August, 1888, he started in haste to run through a half-open door, in order to catch a passing street car; he ran against the door knob, which injured his groin, from which death resulted in fifteen days. The immediate ground work of the action is, that his death was caused by external violent and accidental means.

The policy excepts any liability for death "resulting wholly or partly, directly or indirectly" from several causes, one being "hernia."

The second defense of the answer affirms that the "direct and only result of said accident alleged in the petition" was "hernia," and that "the direct cause of the death was strangulated hernia resulting as aforesaid directly from the said accident."

A general demurrer to this defense, it is argued by counsel, produces a question of law, whether the defendant is liable. There is room for doubting whether it can be decided without evidence; whether it is not a question of fact. The plaintiff affirms that the death was caused by external, violent and accidental means; this defense affirms that the death was caused by the hernia, and that the only direct result of the external,

violent and accidental means was the hernia.    But, by agreement made by counsel, I will pass on this question.

Regarding it solely as a question of law, the resources of both metaphysic and logic may be drawn upon for its argument, and yet leave the question unsolved.

A cause may produce more than one result, or effect.

The *a priori* law of both organic and inorganic progress, according to the most eminent evolution metaphysician of the age is this: "Every active force produces more than one change—every cause produces more than one effect."—Herbert Spencer, in Westminister Review, April, 1857.

Did not the accident produce two effects in this case; hernia and death? Was hernia even a cause? I know it is often difficult to tell what is the cause of something. For illustration, a horse falls on the street because it is wet; the street was made wet by the descending rain drops; the fall of the rain drops was caused by certain atmospheric collocations and changes, and so on.    Which is the cause?

Some logicians maintain that an "effect particularized to the full can never arise from different causes."

But the doctrine of plurality of causes seriously interferes with the espousal of that proposition.

For instance "death may be caused by mental anxiety, plus insufficient food, plus a disease which was not necessarily fatal."

Neither of those causes has any connection with, or dependence upon, the others; and yet their combined, supplementary, work caused death. It is a case of independent plurality of causes.

Again, there is a rule of logic that whatever antecedent can be excluded without preventing the phenomenon, is not the cause, or a condition, of that phenomenon.

In determining what is the cause of Miner's death, can the hernia be excluded, and still leave it certain that death would have occurred? It is on this question that evidence might throw light.

In the branch of the law which concerns itself, and deals with negligence, it is recognized that there may be more than one cause of an effect.

Ordinarily, the direct and proximate cause is the cause that sets in motion a train of events which brings about a result, without the intervention of any force operating and working actively from a new and independent source.    For example, a negligent act causes a nervous shock; the nervous shock causes a physical injury.    The proximate cause of the injury is the negligent act.

In fire insurance law, the rule is broader and more favorable to the insured.    Not only is the cause insured against the proximate cause, when it sets in motion a passive agent which produces the damage, but also when it is itself a mere passive agent operating under natural laws, and set in motion by some other efficient cause to which it is directly traceable.

Is the language of the exception ambiguous? If it is, in obedience to a salutary rule of construction of insurance policies, it must be construed most favorably for the insured.

It was at one time, the usual experience that insurance policies were illusory.    A person unlearned in the arts of language used in the insurance policies could never tell whether he was, or was not, insured.    The leading provision would contain a general indemnity against loss or death, from every cause, but that would be so hedged about with exceptions, sometimes superadded to that provision, but more often endorsed on the back of the policy, where the insured would not look for them; the exceptions would be couched in such an involved style; they would include so many contin-

gencies that an ordinary person, I repeat, unversed in insurance litera-
ture, could never tell when he was insured. Doubtless it was this that
inspired the rule by which insurance policies are construed more favor-
ably for the insured than for the insurer.

In this case, the leading provision of the policy is indemnity against
death resulting from "external, violent and accidental means."

The endorsed conditions are referred to in it. The exception in re-
gard to hernia I have already quoted.

Unlike some policies, the leading provision in this one does not re-
quire the accident to be the sole cause, and the proximate cause, if such
a condition is possible.

Hernia was either not an operating cause of Miner's death, or it was
one of two operating, dominant and efficient causes of his death, or it was
the sole cause. If the accident caused the hernia, and the hernia caused
the death, the most favorable construction for the defendant is that the
hernia was only one of two causes of the death. It is a cause which was
caused by the accident. But it would not be the ancestral, or proximate
cause, of the death.

The proximate cause is not necessarily the one nearest the effect for
which a person is responsible.

A boiler explodes; its original construction was defective; the effect
of the climate, and the unskillfulness of the engineer may have helped to
cause the explosion, but, after all, in the last analysis, the proximate
cause of the explosion was the defective construction of the boiler.

If the hernia was caused by the accident, it is not correct, either logi-
cally, philosophically or legally, to say, as the second defense does, that
the direct cause of Miner's death, was the hernia. It was only the remote
cause, the indirect cause, if it was a cause at all.

The most favorable conclusion for the defendant that can be affirmed
is that the exception is ambiguous. It is susceptible of two construc-
tions. Without the aid of scientific evidence, it can be said that hernia
may be caused by external violence, or it may arise from internal causes.
If the exception in this policy only intended to exclude liability for death
that was caused, indirectly or directly, exclusively or jointly, by hernia
which arose from internal causes, then, the defendant is liable; because
the answer does not aver that its cause was internal. If it in-
tended to exempt the company from liability, when the hernia was caused
by external causes, then, it is not liable.

It seems to be the more reasonable view that it only absolves the
company when the hernia, as one of two or more causes of death, has no
sort of connection with, or dependence upon, external, violent and acci-
dental means.

A death might be caused by an accident, plus hernia, which, in its
origin, had no relation to the accident. It might require both to produce
death. Such a case would be within the obvious meaning of the excep-
tion, because the hernia is collateral to the accident.

I believe I am justified in saying more than this, and that is, that
the exception does not, in letter, or in spirit, provide for more than one
kind of hernia, namely, when death is the result of several combining
causes, one of them being hernia, and where it is only a cause.

It does not provide for exemption where hernia is not only a cause,
but is itself an effect of the other cause, or one of the other causes, of
death, which is clearly included as a basis of liability in the leading con-
dition of the policy.

If the company's object was to create an exemption from liability
where the hernia was produced by accident, which was the proximate

cause of the death, it should have been expressly nominated in the exception.

This identical question was decided by the Supreme Court Commission of Colorado, in a case in which the defendant here was defendant, and upon the construction of a policy, which is a fac simile of the one upon which this action is founded, the decision being against the company. The Traveller's Insurance Co. v. Murray, 26 Pac. 774.

The decision of the English court in Fitton v. The Accidental Death Insurance Company, 17 C. B. (N. S.) 122, is not a parallel case, although the decision was against the defendant; because the words of the policy, "or any other disease or cause arising within the system of the insured," were deemed significant and influential in the interpretation of it.

After that case was decided, the company inserted in the clause which I quoted, of all subsequent policies, the words "or secondary," after the word disease; and where, in the case of Smith against the same company, 5 L. R. Ex. cases, 302, it appeared that an accidental wound caused erysipelas, and that caused death, the decision was in favor of the defendant, because the erysipelas was the "secondary cause" of the death.

While this is the view I have adopted of the question argued by counsel, still I cannot sustain the demurrer to the second defense, because it avers that the only result of the accident was the hernia. That is tantamount to an averment that the only cause of Miner's death was the hernia. That makes an issue of fact. It is a denial of the very basis of the plaintiff's case. The first defense is a general denial. The second defense is, in fact, a general denial. These issues can only be determined by the evidence.

Nash & Lentz, for plaintiff.

J. J. Stoddart, for defendant.